# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KATIE LUCILLE BENSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-23-298-JAR |
| ) | |
| COMMISSIONER OF THE SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

### OPINION AND ORDER

Plaintiff Katie Lucille Benson (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is ordered that the Commissioner's decision be **AFFIRMED**.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42

U.S.C. §423(d)(2)(A).  Social Security regulations implement a five-step sequential process to evaluate a disability claim.  *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).  This Court's review is limited to two inquiries:  first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied.  Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted).  The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The court may not re-weigh the evidence nor substitute its discretion for that of the agency.  Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991).  Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight."  Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias,

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910.  Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  20 C.F.R. §§ 404.1521, 416.921.  If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied.  At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry.  If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work.  If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform.  Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work.  *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

933 F.2d at 800-01.

### Claimant's Background

Claimant was 43 years old at the time of the ALJ's decision. Claimant completed her high school education with some vocational technical training. Claimant previously worked as a communication equipment salesperson, collection clerk, and teller. Claimant alleges an inability to work during a closed period from July 24, 2019 through October 1, 2021 due to limitations resulting from left-sided numbness, weakness, severe headache, leg pain, generalized weakness, dizziness, falls, tingling in her face, occipital neuralgia, tachycardia, and slurred speech.

### Procedural History

On April 29, 2019, Claimant protectively filed for Supplemental Security Income under Title XVI (42 U.S.C. § 1381, *et seq.*) and disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On March 17, 2021, Administrative Law Judge ("ALJ") Doug Gabbard, II issued an unfavorable decision after an administrative hearing. On November 3, 2021, the Appeals Council remanded the case for the ALJ to evaluate Claimant's seizure disorder to determine if Claimant met a listing, obtain additional evidence, and re-evaluate Claimant's residual functional capacity. On May 3, 2022, the ALJ conducted an administrative hearing by telephone due to the extraordinary circumstances posed by the COVID-19 pandemic. On July 5, 2022, the ALJ issued a second unfavorable decision. On October 14, 2022, the Appeals Council denied review of the ALJ's second decision. As a result, the decision of the ALJ represents the

Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He determined that, while Claimant suffered from a severe impairment, she retained the residual functional capacity ("RFC") to perform her past relevant work.

### Error Alleged for Review

Claimant asserts the ALJ erred in (1) failing to properly reach Claimant's RFC under the regulations; and (2) failing to properly assess Claimant's subjective statements.

### RFC Determination

In his decision, the ALJ determined Claimant suffered from the severe impairments of status post cerebrovascular accident, atherosclerotic coronary artery disease, seizure disorder, spondylolisthesis, and chronic L1 compression fracture. (Tr. 20-21). The ALJ found none of Claimant's alleged conditions met a listing. (Tr. 23-24). In consideration of her impairments, the ALJ determined that Claimant retained the RFC to perform light work. (Tr. 24). In so doing, the ALJ determined Claimant could occasionally climb ramps and stairs, could not climb ladders, ropes, or scaffolding, could frequently handle, finger, and feel bilaterally, and should avoid even moderate exposure to hazards, such as open flames, unprotected heights and dangerous moving machinery. (Tr. 24-25). After consultation with a vocational expert, the ALJ found Claimant could perform her past relevant work as a collection clerk and teller. (Tr. 32). Consequently, the ALJ concluded that Claimant had not been under a disability from July 24, 2019 through the date

of the decision.  (Tr. 35).

Claimant first contends the ALJ failed to properly evaluate whether Claimant's seizures met a listing.  Specifically, the Appeals Council directed that the ALJ evaluate Claimant's condition under Listing 11.02 and 11.04.  (Tr. 202).  On remand, the ALJ concluded that Claimant's status post cerebrovascular accident did not meet or equal Listing 11.04 because Claimant did not have sensory or motor aphasia resulting in ineffective speech or communication, persisting for at least three consecutive months after the injury or disorganization of motor function in two extremities resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities or marked limitation in physical functioning and in the areas of understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself.  (Tr. 23).

The ALJ also found Claimant did not meet or equal Listing 11.02 because she did not have (A) generalized tonic-clonic seizures, occurring at least once a month for at least three consecutive months despite adherence to prescribed treatment; or (B) dyscognitive seizures, occurring at least once a week for three consecutive months despite adherence to prescribed treatment; or (C) generalized tonic-clonic seizures, occurring at least once every two months for at least four consecutive months despite adherence to prescribed treatment, and a marked limitation in one of the following:  physical functioning, or understanding, remembering, or applying information, or interacting with others, or concentrating, persisting, and maintaining pace, or adapting or

managing oneself; or (D) dyscognitive seizures, occurring at least once every two week for at least three consecutive months despite adherence to prescribed treatment, and a marked limitation in one of the following: physical functioning, or understanding, remembering, or applying information, or interacting with others, or concentrating, persisting, and maintaining pace, or adapting or managing oneself. (Tr. 24); *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 11.02.

When the ALJ finds at step two that the claimant has a severe impairment or combination of impairments, meaning that the impairment(s) significantly limits the claimant's ability to do basic work activities, the ALJ must determine at step three whether that impairment or combination of impairments meets or equals "a condition 'listed in the appendix of the relevant disability regulation.' " 20 C.F.R. §§ 404.1522, 416.922; Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). "The Commissioner[']s] ... 'Listing of Impairments' ... describes certain impairments that she considers disabling." Jennifer M.A. v. Saul, 2021 WL 1056426, *3 (D. Kan. 2021); 20 C.F.R. §§ 404.1525(a); 416.925(a). The medical criteria defining these listed impairments have been "explicitly ... set ... at a higher level of severity than the statutory standard," making the listings those that "would prevent an adult, regardless of h[er] age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.' " Id. Thus, the listings are designed to simplify the decision process by identifying at step three those claimants whose "medical conditions [are] so debilitating as to warrant an automatic presumption of disability without further consideration of the claimant's [RFC] or ability to perform past or other work." Kenneth M. v. Kijakazi, 2021 WL 4133878, *3 (D. Utah 2021). "Because the Listings, if met,

operate to cut off further detailed inquiry, they should not be read expansively." Jennifer M.A., *supra* at *3.

Again, the claimant bears the burden at step three to "present evidence establishing [that] her impairments meet or equal listed impairments." Fischer-Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005). "An [ALJ] will find that an impairment '*meets* the requirements of a listing when it satisfies all the criteria of that listing.' " Jandt v. Saul, 2021 WL 467200, *4 (W.D.Ky 2021). "An [ALJ] will find that an impairment is '*medically equivalent* to a listed impairment... if it is at least equal in severity and duration to the criteria of any listed impairment.' " Id.

Medical equivalence is found in three ways:

1. If an individual has an impairment that is described in the listings, but either:

    a. the individual does not exhibit one or more of the findings specified in the particular listing, or

    b. the individual exhibits all of the findings, but one or more of the findings is not as severe as specified in the particular listing, then we will find that his or her impairment is medically equivalent to that listing if there are other findings related to the impairment that are at least of equal medical significance to the required criteria.

2. If an individual has an impairment(s) that is not described in the listings, we will compare the findings with those for closely analogous listed impairments. If the findings related to the impairment(s) are at least of equal medical significance to those of a listed impairment, we will find that the impairment(s) is medically equivalent to the analogous listing.

3. If an individual has a combination of impairments, no one of which meets a listing, we will compare the findings with those for closely analogous listed impairments. If the findings related to the impairments are at least of equal medical significance to

>those of a listed impairment, we will find that the combination of impairments is medically equivalent to that listing.
>
>Soc. Sec. Ruling 17-2p: Titles II & Xvi: Evidence Needed by Adjudicators at the Hearings & Appeals Council Levels of the Admin. Rev. Process to Make Findings About Med. Equivalence, SSR 17-2P (S.S.A. Mar. 27, 2017).

To demonstrate the required support of a finding that an individual is disabled based on medical equivalence at step 3, the record must contain one of the following:

>1. A prior administrative medical finding from a[] [medical consultant] or [psychological consultant] from the initial or reconsideration adjudication levels supporting the medical equivalence finding, or
>
>2. [Medical expert] evidence, which may include testimony or written responses to interrogatories, obtained at the hearings level supporting the medical equivalence finding, or
>
>3. A report from the [Appeals Council's] medical support staff supporting the medical equivalence finding.

Soc. Sec. Ruling 17-2p: Titles II & Xvi: Evidence Needed by Adjudicators at the Hearings & Appeals Council Levels of the Admin. Rev. Process to Make Findings About Med. Equivalence, SSR 17-2P (S.S.A. Mar. 27, 2017)(bracketed information added by this Court).

Certainly, no "prior administrative finding" has been made by a medical professional supporting equivalency.[2]  Indeed, the opposite is true.  (Tr. 113, 152).  No medical expert or medical support staff at the Appeals Council level has provided testimony or evidence to indicate or suggest equivalency.   The only opinion evidence in the record indicating a severe level limitation was Angelina Frost, APRN, who completed an RFC assessment dated August 4, 2020.

---

[2] Claimant repeatedly refers to meeting or equaling Listing 12.00, which is the generalized category of mental disorders.  Without specificity as to a particular subsection, no evidence from a competent psychological medical source indicates that the listing for mental disorders should be employed.

(Tr. 1331-35). But, as noted by the ALJ, Nurse Frost's findings were directly contradicted by Dr. Kathleen Ward, a psychologist that evaluated Claimant and found her mental state to be largely normal or unremarkable with some limited deficits in social judgment and problem solving. (Tr. 1200-03). Nurse Frost's conclusions of significant limitations were also contradicted by her own treatment notes which were also largely normal, save for one incident of a minor seizure in the office which lasted two to three minutes. While Nurse Frost relied upon findings of several medication conditions for her limitations, her treatment records do not indicate abnormal findings. The ALJ also noted that Nurse Frost only provided routine, conservative treatment of Claimant, consisting of medication refills of the same dosages. (Tr. 31).

Moreover, the evaluations of the state agency reviewers, Dr. Joy Kelley and Dr. Stephanie Crall, support a finding of no severe mental impairments. They acknowledged the litany of misdiagnoses which accompanied Claimant's various medical evaluations, including strokes and multiple sclerosis but found no limitations upon her mental functioning. (Tr. 111-13, 149-52). While Claimant challenges a finding of no limitations when she has been diagnosed with brain lesions, the evidence of such limitations is lacking in the medical record. The ALJ did not err in his evaluation of whether Claimant's conditions met or equaled a listing.

### Evaluation of Claimant's Subjective Statements

Claimant alleges that the ALJ failed to properly evaluate her subjective statements of limitation and pain under Soc. Sec. R. 16-3p. Nothing in the ALJ's opinion indicates this is the case. The ALJ found Claimant's statements of limitation were inconsistent with the medical evidence which he found to be consistently normal. (Tr. 27). While she claims she suffers from multiple sclerosis, the ALJ noted that she was not placed on medication. (Tr. 28). While she

claimed to have suffered strokes, the medical evidence does not bear this diagnosis out. (Tr. 27). While she states she suffers from headaches, the dosage of the medication which she has been prescribed has not changed. Id.

Effective March 26, 2016, the Social Security Administration issued a new policy interpretation ruling governing the evaluation of symptoms in disability claims. Soc. Sec. R. 16-3p, *Titles II & XVI: Evaluation of Symptoms in Disability Claims*, 2016 WL 1119029 (Mar. 16, 2016) (superseding Soc. Sec. R. 96-7p, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, 1996 WL 374186 (July 2, 1996)). The purpose of the new policy, which applies to the case at bar, is to "eliminat[e] the use of the term 'credibility' from [the] sub-regulatory policy" and "clarify that subjective symptom evaluation is not an examination of an individual's character." Soc. Sec. R. 16-3p at *1; *see also* Sonnenfeld v. Comm'r, Soc. Sec. Admin., 2018 WL 1556262, at *5 (D. Colo. Mar. 30, 2018) (explaining that "SSR 16-3p is a policy interpretation ruling issued by the Social Security Administration that generally eliminates 'credibility' assessments from the social security disability analysis"). In place of "credibility," the Social Security Administration now utilizes the term "consistency." Specifically, the policy provides that "if an individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record, we will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities." Soc. Sec. R. 16-3p at *7. Conversely, if the individual's "statements about his symptoms are inconsistent with the objective medical evidence and other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." Id.; *see also*

Sonnenfeld, 2018 WL 1556262, at *5 (explaining that Soc. Sec. R. 16-3p replaces a credibility assessment with an "assessment of the *consistency* of a claimant's statement with the record in its entirety").

Under the new policy, the Social Security Administration continues to evaluate a disability claimant's symptoms using a two-step process:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities for an adult . . . .

Soc. Sec. R. 16-3p at *2.

With respect to the first inquiry, "[a]n individual's symptoms, . . . will not be found to affect the ability to perform work-related activities for an adult . . . unless medical signs or laboratory findings show a medically determinable impairment is present." Id. at *3. In conducting the second inquiry, the ALJ should examine "the entire case record, including the objective medical evidence; an individual's statements about the . . . symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id. at *4.

In accordance with the general standards explained above, the Tenth Circuit has previously stated that an ALJ conducting a "credibility" analysis must consider and determine:

> (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a "loose nexus"); and (3) if so, whether, considering all the

11

> evidence, both objective and subjective, the claimant's pain was in fact disabling.
>
> Keyes-Zachary v. Astrue, 695 F.3d 1156, 1166–67 (10th Cir. 2012) (citing Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987)).

Factors the ALJ should consider in determining whether a claimant's pain is in fact disabling include the claimant's attempts to find relief; a claimant's willingness to try any treatment prescribed; a claimant's regular contact with a doctor; the possibility that psychological disorders combine with physical problems; the claimant's daily activities; and the dosage, effectiveness, and side effects of medication taken by the claimant. Keyes-Zachary, 695 F.3d at 1166–67; *see also* Soc. Sec. R. 16-3p at *7 (listing similar factors); 20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3).

Credibility/consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." Cowan v. Astrue, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting Kepler, 68 F.3d at 391). However, the ALJ's consistency findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Id. (quoting Kepler, 68 F.3d at 391). This pronouncement by the Tenth Circuit echoes the Social Security Administration's policy interpretation regarding what an ALJ must include in his written decision. *See* Soc. Sec. R. 16-3p at *9 ("The [ALJ's] determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."). So long as the ALJ sets forth the specific evidence he relies on in evaluating the consistency of the claimant's subjective complaints with other evidence, the ALJ "need not make a formalistic factor-by-factor recitation of the evidence." Keyes-Zachary, 695

F.3d at 1167. "[C]ommon sense, not technical perfection, is [the reviewing court's] guide." Id.

Claimant's statements concerning her limitations brought about by her seizures and headaches are not consistent with the objective medical record. The ALJ's consideration of Claimant's subjective statements with skepticism given the medical record is supported and this Court finds no error in his conclusions.

### Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

IT IS SO ORDERED this 30th day of September, 2024.

_____
JASON A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE